UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DOROTHY M. SHAW,                          :

                    Plaintiff,            :     09 Civ. 6617 (DAB)(HBP)

     -against-                            :
                                                REPORT AND
UNITED STATES POSTAL SERVICE,             :     RECOMMENDATION
JOHN E. POTTER, Postmaster
General, United States                    :
Postal Service, C. ANDREWS,
                                          :
                    Defendants.
                                          :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.   Introduction


          This is an employment discrimination action brought by

a pro se plaintiff under the Age Discrimination in Employment Act

of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.,[1]

_____

          [1]Plaintiff claims that defendants discriminated against her
on the basis of her disabilities (Amended Complaint (Docket Item
9) ("Am. Compl."), at 2 Section II(D)).  Plaintiff bases these
claims on the ADA (Am. Compl. at 1).  Plaintiff, a former
employee of the United States Postal Service, is a federal
employee within the meaning of the ADA.  See 42 U.S.C. §

                                              (continued...)

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y. City Admin Code §§ 8-101 et seq.  Construed liberally, plaintiff's complaint also asserts claims under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8103 et seq. Plaintiff, a former employee of the United States Postal Service (the "Postal Service"), alleges that due to her age, race, color, gender, and disabilities, she was subjected to acts of disparate treatment and retaliation over the course of more than thirty years.  She also alleges that she was denied United States Department of Labor, Office of Workers' Compensation Program ("OWCP") benefits.

---

[1](...continued)
12111(5)(B)(i); White v. U.S. Postal Serv., 01 Civ. 499 (RCC/KNF), 2002 WL 31466767 at *1 (S.D.N.Y. Oct. 31, 2002) (Fox, M.J.).  The federal government, however, does not fall within the definition of an"employer" for purposes of the ADA; federal employees, therefore, cannot assert employment discrimination claims under the ADA.  See 42 U.S.C. § 12111(5)(B)(i); Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998); White v. U.S. Postal Serv., supra, 2002 WL 31466767 at *1.  A federal employee's exclusive remedy for discrimination based on disability falls within the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 et seq.  Rivera v. Heyman, supra, 157 F.3d at 103; see 42 U.S.C. § 12111(5)(B).  I shall, therefore, consider plaintiff's discrimination claims under the Rehabilitation Act. See Rivera v. Heyman, supra, 157 F.3d at 103-04; Marinelli v. Chao, 222 F. Supp. 2d 402, 409 n.3 (S.D.N.Y. 2002) (Marrero, D.J.).

Defendants move to dismiss the complaint on a variety of grounds (Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defendants' Motion to Dismiss") (Docket Item 12)).  For the reasons set forth below, I respectfully recommend that defendants' motion be granted in all respects.

II.   Facts[2]

A.   Background

Plaintiff is a former employee of the United States Postal Service.  She worked as a Mail Processing Clerk at a facility located at 341 Ninth Avenue in Manhattan (Am. Compl. at 2 Section I C; Dismissal of Formal EEO Complaint, dated Sept. 11, 2008, attached as Exhibit 2 ("Ramirez-Fisher Decl. Ex. 2") to the Declaration of Leslie A. Ramirez-Fisher ("Ramirez-Fisher Decl."), dated Jan. 29, 2010, at 2).

---

[2]The pro se plaintiff's handwritten form complaint does not provide a coherent narrative of the events giving rise to her claims.  Consequently, the facts set forth in this Report and Recommendation are based on the attachments to the Amended Complaint and the exhibits to the Declaration of Leslie A. Ramirez-Fisher, dated January 29, 2010.  To the extent the statement of facts set forth herein lacks continuity, it is merely being reflective of the amended complaint.

A form titled "Request for Personnel Action," dated August 29, 1978, indicates that at some time prior to August 24, 1978, plaintiff was arrested and charged with fraud for receiving $24,940.00 in welfare benefits while she was employed by the Postal Service (Att. 21).[3]  She pled guilty to the charges (Att. 21).  AS a result, the Postal Service suspended plaintiff from duty pursuant to an unspecified arbitration letter dated August 10, 1978 (Att. 21).  Plaintiff returned to work on August 24, 1978, without back pay (Att. 21).

A form titled "Assignment Order," dated January 12, 1981, indicates that the Postal Service assigned plaintiff to perform the duties of a Postal Source Data Technician (Att. 10).  Two days later, on January 14, 1981, a United States Post Office Employee Relations Manager informed plaintiff by letter that a Postal Service Promotion Review Committee had denied plaintiff's application for a Data Systems Supervisor position (Att. 11).

On or about December 21, 1983, the Postal Service, using the "Profile Assessment System for Initial Level Supervi-

---

[3]Plaintiff appended a number of documents and partial documents to the Amended Complaint.  For ease of reference, defendants have sequentially numbered the pages of the attachments.  "Att." refers to an attachment to the amended complaint at the page number assigned by defendants.

sors," evaluated plaintiff as demonstrating "good" abilities
(Att. 12).

On June 28, 1985, C. Andrews, a mail supervisor, and M.
Frederick, a general supervisor, recommended plaintiff for the
position of Mail Flow Controller (Att. 13).  On November 26,
1985, an Acting Manager in the Postal Service's Employee Rela-
tions office acknowledged plaintiff's application for consider-
ation under the "New Initial Level Supervisory Selection System"
(Att. 14).  In that letter, the manager further informed plain-
tiff that a Candidate Evaluation Board determined that plaintiff
was in the "above average" category, and that plaintiff could
submit an application for promotion or reassignment by December
5, 1985 (Att. 14).

On or around January 6, 1989, plaintiff fell on a wet
floor and injured herself at work (Am. Compl. at 3 Section II(E);
Att. 29).  As a result of the accident, plaintiff claims to have
suffered pain in her shoulder, back, arm, neck, hip, leg, and
groin (Att. 29).  It is unclear when plaintiff actually returned
to work after the accident, but on August 9, 1989, Dr. Earl A.
Scott cleared plaintiff to return to her regular duties for
approximately four hours per day, subject to certain limitations
(Letter from Dr. Earl A. Scott, dated August 9, 1989, annexed to
Information for Pre-Complaint Counseling, dated July 15, 2008,

attached as Exhibit 1 ("Ramirez-Fisher Decl. Ex. 1") to the
Ramirez-Fisher Decl., at 17).

On January 12, 1993, Dr. Melvin L. Adler examined
plaintiff and diagnosed her with severe degenerative
osteoarthritis in her lumbrosacral spine and left hip, and
obesity, in addition to other ailments (Letter from Dr. Melvin L.
Adler, dated Jan. 12, 1993, annexed to Ramirez-Fisher Decl. Ex.
1, at 7).  Dr. Adler concluded that plaintiff could not return to
work at the post office (Ramirez-Fisher Declaration Ex. 1 at 7).
An April 13, 2009, letter from a Postal Service Human Resources
Manager indicates that plaintiff has been "on the rolls" of the
OWCP since April 10, 1991 (Att. 37-38).  The letter also indi-
cates that while plaintiff is on the rolls of the OWCP, she is on
leave without pay from the Postal Service (Att. 37-38).


        B.  Administrative History and
            Events Giving Rise to
            Plaintiff's EEOC Complaint

        Plaintiff requested an OWCP hearing on or around
November 13, 2007 (Ramirez-Fisher Decl. Ex. 2 at 1).  Although
the precise purpose of the hearing is unclear, plaintiff asked
for a "review of her case" (Ramirez-Fisher Decl. Ex. 1 at 1).  In
her pre-complaint counseling form, plaintiff claimed that she was

denied unemployment benefits, and that the November 13 hearing ultimately prompted her to seek Equal Employment Opportunity ("EEO") counseling (Ramirez-Fisher Decl. Ex. 1 at 1).

On or about December 29, 2007, plaintiff applied for disability benefits for her work-related injuries under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8103 et seq. (Att. 28). At the time, she claimed a workers' compensation annuity of $2,125.88 per month that she had been receiving since February 1992 (Att. 28). In an undated handwritten note affixed to her December 29 application, plaintiff requested information from a Ms. Barbara Pottinger related to back pay (Att. 28, 30). Plaintiff asked Pottinger to "put in" for April 1991 through January 1992; it is not clear what plaintiff sought to have Pottinger "put in" for (Att. 28).

On April 2, 2008, David Padilla, a Health & Resource Management Specialist for the Postal Service's New York District, wrote to plaintiff regarding her claim for lost wage compensation for the period April 1, 1991 through January 11, 1992 (Att. 32). OWCP required a daily breakdown of plaintiff's lost time in order to address her claim for lost wages (Att. 32). The Postal Service could not process plaintiff's claim without this information (Att. 32). In an undated notation written by plaintiff on Mr. Padilla's April 2 letter, plaintiff indicates

that she mailed back a form for "leave buyback, leave without pay," and that she did not know why she would have to retrieve records dating back to 1989 to obtain lost wages (Att. 32).

On June 25, 2008, plaintiff requested pre-complaint processing with a United States Equal Employment Opportunity Commission ("EEOC") Dispute Resolution Specialist (Ramirez-Fisher Decl. Ex. 1 at 1; Ramirez-Fisher Decl. Ex. 2 at 2).

On or about July 15, 2008, plaintiff mailed an EEO Information for Pre-Complaint Counseling form in which she alleged that she was the victim of discrimination on the basis of age, race, and disability (Ramirez-Fisher Decl. Ex. 1 at 1). Plaintiff alleged that during the November 13, 2007 hearing, she "asked for a review of her case" (Ramirez-Fisher Decl. Ex. 1 at 1). She further alleged that "[t]hey are not treating me fairly" (Ramirez-Fisher Decl. Ex. 1 at 1). She claimed that all of her benefits came from the Postal Service "records," and that she was "denied unemployment benefits, [for her] mental[l]y ill son, health benefits for my late husband" (Ramirez-Fisher Decl. Ex. 1 at 1). She claimed that she "lost life insurance with disability claus [sic] and could not collect from New York Metro because they never gave me date last paid" (Ramirez-Fisher Decl. Ex. 1 at 1). She claimed that her problem is "being denied civil rights, not Mr. Andrews" (Ramirez-Fisher Decl. Ex. 1 at 1).

8

Plaintiff alleged that she was "denied a request to transfer to work in North Carolina," and that she was "not able to advance, [and the] job given [to her] was below level after [an] on [the] job injury" (Ramirez-Fisher Decl. Ex. 1 at 2).  She claimed that she was treated differently when she "punched in on [the] third floor but usually worked on [the] 5th or 2nd floor [] with mailhandlers . . . trying to put letters that were wet [or] torn together," and that she "was given the dirty jobs [or] work on the conveyor belt picking out bundles of mail when they [are] dumped out of bags" (Ramirez-Fisher Decl. Ex. 1 at 2).

Plaintiff claimed that a female African American "mailhandler" was allowed to "transfer to Maryland and back to Morgan," and that the employee "has cancer and quickly [got] on disability retirement" (Ramirez-Fisher Decl. Ex. 1 at 2).  That employee told plaintiff that "she was getting disability" (Ramirez-Fisher Decl. Ex. 1 at 2).  Plaintiff claimed that everyone "treated [the other employee] nice and monetary collec- tions were given to her" (Ramirez-Fisher Decl. Ex. 1 at 2).

Plaintiff also claimed that another female African American employee was "sickly" and "was absent often," that other workers that were sick were given "easier" jobs, and that after plaintiff's injury, plaintiff was given the "worst" jobs (Ramirez-Fisher Decl. Ex. 1 at 2).  Plaintiff claimed that a

Workers' Compensation Claims Examiner and a Mr. Andre Stephens prompted plaintiff to seek counseling (Ramirez-Fisher Decl. Ex. 1 at 2). Plaintiff claimed that she was retaliated against because she asked for a copy of her personnel file and "wrote someone last year" to expedite her workers' compensation case because she wanted to move to North Carolina (Ramirez-Fisher Decl. Ex. 1 at 2).

On August 20, 2008, plaintiff received a Notice of Right to File an Individual Complaint of Discrimination (Ramirez-Fisher Decl. Ex. 2 at 2).

An EEO ADR Specialist provided plaintiff with an amended Notice of Right to File on August 29, 2008 which analyzed plaintiff's claims that she was discriminated against on the basis of age, race, and disability when she (1) requested an OWCP hearing on November 13, 2007; (2) was denied unemployment bene-fits on an unspecified date; (3) was denied a claim for disabil-ity insurance on an unspecified date; (4) was denied a transfer to work in North Carolina on an unspecified date; (5) was denied a promotion on an unspecified date because she filed an OWCP claim and (6) was "assigned to work on a conveyor belt and Morgan P&DC" on an unspecified date (Att. 5). The EEO ADR Specialist indicated that the Postal Service and Post Office did not have jurisdiction over claims (1) and (3), and that claim (2) was

somehow related to her 1978 guilty plea and suspension in lieu of removal (Att. 5).  The specialist did not, however, explain, how claim (2) related to the 1978 guilty plea (Att. 5).  With respect to claim (4), plaintiff did not provide a specific date for the allegedly discriminatory conduct related to her transfer request (Att. 5).  Plaintiff misplaced and has not submitted the portion of the August 29, 2008 letter containing the EEO ADR Specialist's analysis of claims (5) and (6).

On or about August 30, 2008, plaintiff filed a formal EEO Complaint of Discrimination against the Postal Service (Att. 33).  Plaintiff alleged that she was discriminated against on the basis of race when she was passed over for job assignments; that she was discriminated against on the basis of her color when she had to prove her worth each day; that she was discriminated against on the basis of gender because she "always volunteered to do things because men were favored," that she was "put on the 2nd floor with mailhandlers" in 1989, and that her qualifications "meant nothing;" that she was "blacklisted and fired for fraud [in 1978] before any law agency" questioned her; that she did not get unemployment benefits because she was "out" for seven or eight months; that she was "used" to "canvass and collect money all over the post office," and that had she been working, she would not have pled guilty to the fraud charges (Att. 33).

In an addendum dated August 30, 2008, plaintiff further claimed that she was "treated like [a] mailhandler" in 1990 (Att. 34).  She also claimed that the Postal Service did not provide her with a hospital bed or wheelchair, and that Ms. Pottinger and Mr. Padilla "blocked" her from obtaining benefits (Att. 34). Additionally, she claimed that she was denied disability retirement, and that she did not receive better medical care because "they" did not readily accept that she was injured (Att. 34).

In an amended statement of her claim dated September 10, 2008, plaintiff again claimed that the Postal Service did not readily accept her injury and prevented her from "pay IOD," that she was "degra[d]ed" and underpaid, that she was denied benefits beginning in 1989, that she was charged with fraud in 1977 and pled guilty because the Postal Service suspended her from duty, that she was denied disability retirement on April 10, 1991, that she unsuccessfully tried to transfer to North Carolina in the 1980s, that she was denied a promotion and compensation at "level 15" in 1991, and that she was assigned to work with "mailhandlers" after her accident (Att. 35).

On September 11, 2008, the Postal Service National EEO Investigatory Services Office dismissed plaintiff's complaint (Ramirez-Fisher Decl. Ex. 2 at 1-6).  The dismissal summarized

plaintiff's allegations[4] of discrimination based on race, age,
and gender, to wit, that (1) on or about November 13, 2007,
plaintiff requested an OWCP hearing; (2) on or about August 28,
1991, plaintiff was denied a claim for American Postal Worker's
Union disability insurance; (3) on or about August 10, 1989,
plaintiff was assigned to "work a conveyor belt at Morgan
Station;" (4) on or about August 19, 1989, plaintiff was denied a
transfer to North Carolina; (5) on or about January 13, 1981 and
November 26, 1985, plaintiff was denied promotions and (6) on or
about August 23, 1978, plaintiff was denied unemployment benefits
(Ramirez-Fisher Decl. Ex. 2 at 1-2).  The National EEO
Investigatory Services Office concluded that all of plaintiff's
allegations were untimely pursuant to 29 C.F.R. Sections
1614.105(a)(1) and 107(a) (Ramirez-Fisher Decl. Ex. 2 at 2).

Noting that 29 C.F.R. § 1614.105(a)(1) required a
Postal Service employee to contact an EEO counselor within forty-
five days of an allegedly discriminatory act, the National EEO
Investigatory Services Office concluded that plaintiff's claims
were untimely because the most recent allegedly discriminatory
act asserted by plaintiff occurred at least seven months before

---

[4]The dismissal noted that the agency gleaned plaintiff's
allegations from a Dispute Resolution Specialist's Report,
rather than from plaintiff's "vague and non-specific" formal
complaint (Ramirez-Fisher Decl. Ex. 2 at 1 n.1).

13

plaintiff initiated contact with an EEO counselor and no
equitable tolls were available to salvage the claims (Ramirez-
Fisher Decl. Ex. 2 at 2-3).  The National EEO Investigatory
Services Office went on to note that plaintiff's first, second
and sixth claims were also subject to dismissal because these
claims improperly attempted to attack decisions rendered in other
forums (Ramirez-Fisher Decl. Ex. 2 at 3).

Plaintiff filed a timely appeal with the EEOC (EEOC
Decision, dated Jan. 15, 2009 ("Ramirez-Fisher Decl. Ex. 3"),
attached as Exhibit 3 to the Ramirez-Fisher Decl., at 1).  The
EEOC affirmed the agency decision on January 15, 2009 for the
same reasons cited by the National EEO Investigatory Services
Office (Ramirez-Fisher Decl. Ex. 3 at 1-3).

Plaintiff petitioned the EEOC for reconsideration,
but on March 19, 2009, the EEOC adhered to the January 15, 2009
decision (Att. 1-2).  The EEOC also informed plaintiff that she
had no further administrative remedies and authorized plaintiff
to file a civil action in federal court (Att. 1-2).

C.  <u>Procedural History</u>

Plaintiff commenced this action by filing a complaint
on July 27, 2009 (Complaint, Docket Item 2).  Plaintiff filed an

amended complaint on December 10, 2009 (Amended Complaint, Docket Item 9).

In her Amended Complaint, plaintiff alleges that defendants discriminated against her by terminating her employment, failing to promote her, failing to accommodate her disability, providing unequal terms and conditions of employment, retaliating against her and other acts (Am. Compl. at 2-3 Section II(A)).  Regarding her retaliation claims, plaintiff complains of discriminatory conduct such as "menial jobs, isolated from co-workers," and that she "worked [fifteen] years or more [and was] demoted" (Am. Compl. at 3 Section II(A)).  Regarding her claims of other acts of discrimination, plaintiff alleges, "I'm on workers.  They take my entitlement tricks: I'm rifed [sic] and not notified" (Am. Compl. at 3 Section II(A)).  Plaintiff alleges that, to the best of her knowledge, the discriminatory acts occurred from 1977 through 2009, and that defendants continue to discriminate against her (Am. Compl. at 3 Section II(B)-(C)).

In her statement of the claim, plaintiff alleges that she was fired "before detectives ask[ed] [her] to come down to talk" (Am. Compl. at 3 Section II(E)).  She alleges that defendant Postal Service would not pay "IOD" for two and one-half years (Am. Compl. at 3 Section II(E)).  She alleges that she fell on a wet floor and injured herself, and as a result of the

accident, "they" treated her like she had "no worth" (Am. Compl.
at 3 Section II(E)).  Plaintiff claims that prior to the acci-
dent, she was the "darling" of the office and that she "[did]
things" for management (Am. Compl. at 3 Section II(E)).  She
claims that after the accident, "they want to say [that she is] a
sickly person," even though she "made lots of overtime"  (Am.
Compl. at 3 Section II(E)).  She claims that she was "told to
retire, no disability" (Am. Compl. at 3 Section II(E)).  Plain-
tiff recalled that she filed a charge regarding the allegedly
discriminatory conduct with the EEOC on November 8, 2008 (Am.
Compl. at 3 Section III(A)).  She also indicated that the EEOC
issued a Notice of Right to Sue letter on March 23, 2009, and
that more than sixty days had elapsed since filing her age
discrimination claim with the EEOC (Am. Comp. at 4 Section
III(B)-(C)).

On January 29, 2010, defendants moved to dismiss
plaintiff's amended complaint pursuant to Federal Rule of Civil
Procedure 12(b)(1) and Rule 12(b)(6) (Defendants' Motion to
Dismiss, Docket Item 12).  Specifically, defendants argue that
this Court lacks subject matter jurisdiction over plaintiff's
FECA claims.  Defendants argue that the remainder of plaintiff's
claims should be dismissed because plaintiff failed to seek EEO
counseling in a timely manner, as well as for other reasons.

16

Plaintiff submitted a response to defendants' motion on or around

May 27, 2010.[5]

III.  Analysis

    A.  The Court's Subject
       Matter Jurisdiction
       over Plaintiff's FECA Claim[6]

        1.  Legal Standards Governing
           Motions to Dismiss for Lack
           of Subject Matter Jurisdiction

      The standards applicable to a motion to dismiss for

lack of subject matter jurisdiction were comprehensively set

forth by the Honorable Denise L. Cote, United States District

---

    [5]Although plaintiff, who is proceeding pro se, received the notice required by Local Civil Rule 12.1 with Defendants' Motion to Dismiss, she did not submit any substantive response to the motion.  Accordingly, I issued an Order on April 27, 2010 (Docket Item 14) advising her of the nature of defendants' motion, the nature of the material that needs to be submitted if she was opposing the motion, and the potential consequences if she failed to submit evidentiary material opposing the motion. Although plaintiff did make a submission in response to my April 27 Order, it did not address the issues raised in defendant's motion nor did it controvert the version of the facts set forth in defendants' motion.

    [6]Pursuant to Arrowsmith v. United Press Int'l, 320 F.3d 219, 221 (2d Cir. 1963), I address the challenge to the Court's subject matter jurisdiction before addressing defendants' other attacks on the amended complaint.  See also Hertzner v. U.S. Postal Serv., 05-cv-2371 (DRH)(ARL), 2007 WL 869585 at *3 (E.D.N.Y. Mar. 20, 2007); Sunrise Indus. Joint Venture v. Ditric Optics, Inc., 873 F. Supp. 765, 769 (E.D.N.Y. 1995)

Judge, in <u>Cromer Finance Ltd. v. Berger</u>, 137 F. Supp. 2d 452, 467 (S.D.N.Y. 2001):

> In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," <u>Shipping Fin. Serv. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." <u>Id.</u> (citing <u>Norton v. Larney</u>, 266 U.S. 511, 515 (1925)).  Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." <u>Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).  Where jurisdiction is "so intertwined with the merits that its resolution depends on the resolution of the merits," the court should use the standard "applicable to a motion for summary judgment" and dismiss only where "no triable issues of fact" exist.  <u>London v. Polishook</u>, 189 F.3d 196, 198-99 (2d Cir. 1999) (citation omitted); <u>see</u> <u>also</u> <u>Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London</u>, 147 F.3d 118, 121 n.1 (2d Cir. 1998).

(alteration in original); <u>see</u> <u>also</u> <u>Morrison v. Nat'l Austl. Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, 130 S. Ct. 2869 (2010); <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>Friends of Hamilton Grange v. Salazar</u>, 08 Civ. 5220 (DLC), 2009 WL 650262 at *12 (S.D.N.Y. Mar. 12, 2009) (Cote, D.J.); <u>Espada v. N.Y. Bd. of Elections</u>, 07 Civ. 7622 (SAS), 2007 WL 2588477 at *2 (S.D.N.Y. Sept. 4, 2007) (Scheindlin, D.J.).  The party asserting that the court has subject matter jurisdiction bears the burden of proving the court's jurisdiction.  <u>FW/PBS,</u>

Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Morrison v.
Nat'l Austl. Bank Ltd., supra, 547 F.3d at 170; Makarova v.
United States, supra, 201 F.3d at 113.

           2.  Plaintiff's
               FECA Claim

       In her FECA claim, plaintiff alleges that she was
denied workers' compensation benefits.  Specifically, she claims
that she was denied a hospital bed and a wheelchair, that she was
denied wages, that she was denied benefits for her handicapped
son, that David Padilla and Barbara Pottinger "blocked" her from
receiving benefits, and that she was denied disability retire-
ment, among other things (Att. 34).

       FECA provides the exclusive remedy for federal employ-
ees seeking compensation for work-related injuries.  5 U.S.C. §
8116(c)[7]; Lockheed Aircraft Corp. v. United States, 460 U.S. 190,

---

      [7]Section 8116(c) provides, in pertinent part:

> The liability of the United States or an
> instrumentality thereof under this subchapter or any
> extension thereof with respect to the injury or death
> of an employee is exclusive and instead of all other
> liability of the United States or the instrumentality
> to the employee, his legal representative, spouse,
> dependents, next of kin, and any other person
> otherwise entitled to recover damages from the United
> States or the instrumentality because of the injury or
> death in a direct judicial proceeding, in a civil
> action, or in admiralty, or by an administrative or
>                       (continued...)

193-94 (1983); <u>Votteler v. United States</u>, 904 F.2d 128, 129-30 (2d Cir. 1990).  FECA requires the government to provide medical services, appliances, and supplies for federal employees injured in the course of duty.  <u>See</u>, <u>e.g.</u>, 5 U.S.C. § 8103.  Postal Service workers are federal employees covered by the FECA. <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 80 n.9 (2d Cir. 2008), <u>citing</u> 39 U.S.C. § 1005(c).

The OWCP administers the injury compensation program for Postal Service employees and determines whether or not an injury is compensable under FECA.  <u>Bumpus v. Runyon</u>, 93 Civ. 3264 (LAP), 1997 WL 539924 at *1 n.1 (S.D.N.Y. Aug. 28, 1997) (Preska, D.J.).  The Secretary of Labor, and not the Postal Service, ultimately determines the compensability of the employee's injury under FECA.  <u>Alenski v. Potter</u>, CV-03-2179 (SJF)(MLO), 2005 WL 1309043 at *10 (E.D.N.Y. May 18, 2005); <u>see</u> 5 U.S.C. § 8124.  The Secretary of Labor's determination in this regard is not subject to judicial review by federal courts.[8]  <u>See</u> 5 U.S.C. § 8128(b);

---

[7](...continued)
    judicial proceeding under a workmen's compensation
    statute or under a Federal tort liability statute . .
    . .

[8]In spite of the Secretary of Labor's exclusive
jurisdiction over FECA claims, some courts in this circuit have
acknowledged that limited judicial review of the Secretary of
Labor's determinations is appropriate where an administrative
agency exceeded the scope of its delegated authority, or where
the claims assert violations of a clear statutory mandate.
                                              (continued...)

<u>Sw. Marine, Inc. v. Gizoni</u>, 502 U.S. 81, 90 (1991), <u>quoting</u>
<u>Lindahl v. Office of Pers. Mgmt.</u>, 470 U.S. 768, 780 & n.13
(1985).

      Plaintiff cannot circumvent the Department of Labor's
exclusive jurisdiction by collaterally attacking a denial of
workers' compensation benefits as retaliatory.   <u>Nicastro v.</u>
<u>Runyon</u>, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (McMahon, D.J.).
Because the Secretary of Labor has sole discretion over compensa-
bility of work-related injuries for federal employees, this Court
lacks jurisdiction over plaintiff's claims concerning denial of
workers' compensation benefits.

      Thus, plaintiff's FECA claim should be dismissed for
lack of subject matter jurisdiction.

---

   [8](...continued)
<u>Alenski v. Potter</u>, <u>supra</u>, 2005 WL 1309043 at *10, <u>citing</u> <u>Murphy</u>
<u>v. United States</u>, 340 F. Supp. 2d 160, 168-70 (D. Conn. 2004),
<u>aff'd</u>, 427 F.3d 158 (2d Cir. 2005).  However, since plaintiff's
argument appears to assert claims for a discretionary denial of
benefits, this Court does not have jurisdiction.

B. __Standards Applicable to
a Motion to Dismiss Pursuant
to Federal Rule of Civil
Procedure 12(b)(6)

The standards applicable to a motion to dismiss pursu-

ant to Rule 12(b)(6) are well settled and require only brief

review:

> When deciding a motion to dismiss under Rule 12(b)(6),
> [the court] must accept as true all well-pleaded fac-
> tual allegations of the complaint and draw all infer-
> ences in favor of the pleader.  See City of Los Angeles
> v. Preferred Communications, Inc., 476 U.S. 488, 493
> (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n.2
> (1977) (referring to "well-pleaded allegations"); Mills
> v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.
> 1993).  "'[T]he complaint is deemed to include any
> written instrument attached to it as an exhibit or any
> statement or documents incorporated in it by refer-
> ence.'"  Int'l Audiotext Network, Inc. v. Am. Tel. &
> Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec
> Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d
> Cir. 1991)).  The Court also may consider "matters of
> which judicial notice may be taken."  Leonard [F.] v.
> Israel Discount Bank of New York, 199 F.3d 99, 107 (2d
> Cir. 1999) (citing Allen v. WestPoint-Pepper[e]ll,
> Inc., 945 F.2d 40, 44 (2d Cir. 1991)).  In order to
> avoid dismissal, a plaintiff must do more than plead
> mere "[c]onclusory allegations or legal conclusions
> masquerading as factual conclusions."  Gebhardt v.
> Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)
> (quoting 2 James Wm. Moore, Moore's Federal Practice ¶
> 12.34[a][b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); see also In re Elevator

Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson &

22

Johnson v. Guidant Corp., 525 F. Supp. 2d 336, 345-46 (S.D.N.Y. 2007) (Lynch, D.J.).[9]

_____

[9]Plaintiff attached a series of documents and partial documents to her Amended Complaint.  "[A] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Fed. R. Civ. P. 10(c).  For purposes of a motion to dismiss, the complaint includes:

> any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.

Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quotations and citations omitted).

Additionally, defendants appended plaintiff's Information for Pre-Complaint Counseling and accompanying attachments, the National EEO Investigative Services Office's dismissal of plaintiff's formal EEO complaint, and the January 20, 2009 EEOC decision to their motion to dismiss (Ramirez-Fisher Decl. Ex. 1-3).  On a motion to dismiss, a court may consider "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit."  Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000), citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

In cases where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of records and reports of the relevant administrative bodies, as well as the facts set forth therein.  See Smart v. Goord, 441 F. Supp. 2d 631, 637-38 (S.D.N.Y. 2006) (Sweet, D.J.), on reconsideration in part, 04 Civ. 8850 (RWS), 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008); Dutton v. Swissport USA, Inc., 04 CV 3417 (RJD)(LB), 2005 WL 1593969 at *1 n.1 (E.D.N.Y. July 1, 2005).  Because exhaustion of administrative remedies is a

(continued...)

The Supreme Court has clarified the proper mode of inquiry to evaluate a motion to dismiss pursuant to Rule 12(b)(6), which uses as a starting point the principle that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).

> [I]n Bell Atl[antic] Corp. v. Twombly, 550 U.S. 544 (2007), the Court disavowed the well-known statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plain- tiff can prove no set of facts in support of his claim which would entitle him to relief."  550 U.S. at 562. Instead, to survive a motion to dismiss under Twombly, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

---

[9](...continued) prerequisite to bringing suit under Title VII, the ADA, and the Rehabilitation Act, plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion.  See Smart v. Goord, supra, 441 F. Supp. 2d at 637-38 (noting that where exhaustion of administrative remedies is a prerequisite to suit, exhaustion is integral to plaintiff's claims).

Plaintiff had notice of the exhibits to the Ramirez-Fisher Declaration and relied on those documents in pursuit of her administrative remedies.  See Cortec Indus., Inc. v. Sum Holding L.P., supra, 949 F.2d at 47-48 (holding that, on a motion to dismiss, a court can consider documents submitted by defendants where "there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim").  It is therefore appropriate to consider the record of agency proceedings attached as Exhibits 1-3 to the Ramirez-Fisher Declaration, in addition to the attachments to the Amended Complaint, for purposes of Defendants' Motion to Dismiss.

24

<u>Talley v. Brentwood Union Free Sch. Dist.</u>, 08 Civ. 790, 2009 WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (citations, internal quotations and alterations omitted).

In evaluating a motion under Rule 12(b)(6), a court must determine whether a plaintiff has stated any facially plausible claims.  A plaintiff's allegations state a facially plausible claim when their factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Ashcroft v. Iqbal</u>, <u>supra</u>, 129 S. Ct. at 1949 (internal quotations omitted).

Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'- 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, supra, 129 S. Ct. at 1950, quoting Fed.R.Civ.P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, supra, 129 S. Ct. at 1949.  As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, supra, 129 S. Ct. at 1950.

Nevertheless, where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims the allegations suggest.  Sims v. Blot, 534 F.3d 117, 133 (2d Cir. 2008); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Moreover, liberal pleading rules apply "with particular stringency to complaints of civil rights violations."  Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003).

C.   Timeliness and
     Exhaustion of Plaintiff's
     Administrative Remedies

Defendants contend that plaintiff's Title VII, ADEA, and Rehabilitation Act claims are based on allegedly discriminatory conduct that occurred in 1991 or earlier, and that these claims must be dismissed pursuant to Rule 12(b)(6) because they are untimely (Defendants' Motion to Dismiss at 13-15).

A complaint may be dismissed as untimely under Rule 12(b)(6) where the plaintiff's allegations themselves demonstrate that relief is barred by the applicable statute of limitations. Jones v. Bock, 549 U.S. 199, 214-15 (2007); see Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise [that] affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). Ghartey v. St. John's Queens Hosp., supra, 869 F.2d at 162 (citations omitted).

Title 29 of the Code of Federal Regulations, Section 1614.407, requires a plaintiff bringing claims against the federal government under the ADEA, Rehabilitation Act, and Title VII to exhaust administrative remedies within certain time limits prior to bringing a claim in federal court. See 29 C.F.R. §§

1614.105(a)(1), 1614.407.  A federal employee must comply with applicable EEOC procedures to satisfy exhaustion requirements. Avillan v. Potter, 01 Civ. 1648 (SHS), 2002 WL 252479 at *2 (S.D.N.Y. Feb. 21, 2002) (Stein, D.J.).  Failure to exhaust in a timely manner results in a claim being time-barred, subject to certain equitable tolls.  As the Court of Appeals explained in Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000):

> EEOC regulations require an employee suing the federal government under the Rehabilitation Act to exhaust certain administrative remedies before initiating a suit in the district court.  Thus, an aggrieved agency employee must first seek EEO counseling within forty-five days of the allegedly discriminatory act. See 29 C.F.R. § 1614.105(a)(1).  The employee must then file an EEO complaint with "the agency that allegedly discriminated against the complainant."  Id. § 1614.106.  Within ninety days of that agency's final decision, or after the passage of 180 days from the filing of the complaint with the agency if no final decision has yet been rendered, the complainant may file suit in federal court.  See id. § 1614.40[7].

See also Briones v. Runyon, 101 F.3d 287, 289-90 (2d Cir. 1996) (indicating that the failure to pursue administrative remedies within the required time period "ordinarily . . . preclude[s] a plaintiff from pursuing a discrimination claim in federal court" under Title VII and ADEA);[10] Marinelli v. Chao, supra, 222 F.

---

[10]The ADEA permits an aggrieved party to pursue one of two procedural paths, making an ADEA claim slightly different than a Title VII or Rehabilitation Act claim.  See Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991). A claimant alleging violations

(continued...)

Supp. 2d at 415-16 (explaining that "exhaustion of administrative remedies is a precondition to civil suit under both the Rehabilitation Act and the ADEA") (citations omitted); accord <u>Torres v. U.S. Dep't of Veteran Affairs</u>, <u>supra</u>, 2004 WL 691237 at *4; <u>Padilla v. Potter</u>, 03-CV-6074 (JBW), 2004 WL 3090591 at *2 (E.D.N.Y. July 22, 2004); <u>Fridia v. Henderson</u>, 99 Civ. 10749 (BSJ), 2000 WL 1772779 at *9 (S.D.N.Y. Nov. 30, 2000) (Jones, D.J.); <u>Lynk v. Henderson</u>, 98 Civ. 2086 (MGC), 2000 WL 178859 at *5-*6 (S.D.N.Y. Feb. 15, 2000) (Cedarbaum, D.J.); <u>Baber v. Runyon</u>, 97 Civ. 4798 (DLC), 1998 WL 912065 at *2-*3 (S.D.N.Y. Dec. 30, 1998) (Cote, D.J.); <u>Dillard v. Runyon</u>, 95 Civ. 4899

---

[10](...continued)
of the ADEA need not exhaust her administrative remedies; she may bypass the administrative process altogether by filing a suit in federal court in the first instance.  <u>Torres v. U.S. Dep't of Veteran Affairs</u>, 02 Civ. 9601 (HBP), 2004 WL 691237, at *5 (S.D.N.Y. Mar. 31, 2004) (Pitman, M.J.); <u>Avillan v. Potter</u>, <u>supra</u>, 2002 WL 252479 at *2 (citations omitted); <u>see</u> 29 U.S.C. § 633a(b)-(d); 29 C.F.R. § 1614.201(a); <u>Stevens v. Dep't of Treasury</u>, <u>supra</u>, 500 U.S. at 5-6.  However, if an aggrieved party opts to advance her ADEA claims through the administrative process, she must exhaust her administrative remedies before commencing an action in federal court.  <u>Avillan v. Potter</u>, <u>supra</u>, 2002 WL 252479 at *2 (citations omitted).  Here, plaintiff asserted in her Pre-Complaint Counseling Form (Ramirez-Fisher Decl. Ex. 1 at 1) and her EEO Complaint of Discrimination in the Postal Service (Att. 33) that she was discriminated against on the basis of her age.  She was, therefore, required to exhaust her administrative remedies under the ADEA.  <u>See</u> <u>Avillan v. Potter</u>, <u>supra</u>, 2002 WL 252479 at *2.

(MBM), 928 F. Supp. 1316, 1322-23 (S.D.N.Y. 1996) (Mukasey, D.J.), aff'd, 108 F.3d 1369 (2d Cir. 1997).

　　　　Plaintiff first sought EEO counseling with respect to the claims in her 2008 EEO Complaint on June 25, 2008 (Ramirez-Fisher Decl. Ex. 1 at 1) and filed a formal complaint with the Postal Service on August 30, 2008 (Att. 33). All of the conduct asserted by plaintiff as acts of illegal discrimination occurred before May 6, 2008, i.e., more than forty-five days before plaintiff sought EEO counseling. Although plaintiff's statement of the claim does not specify the date of any of the alleged misconduct, the Dismissal of Formal EEO Complaint indicates that plaintiff's most recent allegations occurred in November 2007 and were related to an OWCP hearing (Ramirez-Fisher Decl. Ex. 2 at 1-2). Accordingly, defendants contend that all allegedly discrimi-natory conduct that occurred during plaintiff's employment with the Postal Service, which ended in 1991, is time-barred (Defen-dants' Motion to Dismiss at 13-15). Because plaintiff has not worked since 1991, plaintiff's claims of discrimination under Title VII, the Rehabilitation Act, and the ADEA are untimely and may only survive a motion to dismiss if they are subject to certain exceptions to EEOC timeliness regulations. See Briones v. Runyon, supra, 101 F.3d at 290 (noting that the EEOC regula-tion requiring an employee to bring a complaint within a certain

time frame "is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling").

The doctrine of equitable tolling may apply if plaintiff has actively pursued her judicial remedies, but filed a defective pleading within the statutory period.  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).  It may also apply where the plaintiff has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, supra, 498 U.S. at 96; see also Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 49-50 (2d Cir. 1985) ("Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit.") (citations omitted); Padilla v. Potter, supra, 2004 WL 3090591 at *3.  Courts in this circuit have also applied equitable tolling when a court has led the plaintiff to believe that she has done all that is required, and where the plaintiff has received inadequate notice. Briones v. Runyon, supra, 101 F.3d at 290 n.2, citing South v. Saab Cars USA, Inc., 28 F.3d 9, 11-12 (2d Cir. 1994).  While EEOC

31

regulations are subject to equitable tolling, plaintiff has provided the court with no reason to grant her an exception to EEOC timeliness requirements.

Although plaintiff alleges that the Postal Service continues to discriminate against her (Am. Compl. at Section II(C)), she has been on leave without pay from the Postal Service since 1991 (Att. 37-38).  She does not allege any discriminatory conduct in her EEO complaint or in her Amended Complaint that took place within forty-five days of her June 25, 2008 EEO counseling session (Ramirez-Fisher Decl. Ex. 1 at 1).  In fact, the incident that prompted plaintiff to seek EEO counseling took place at a hearing on November 13, 2007, more than seven months before she sought EEO counseling (Ramirez-Fisher Decl. Ex. 1 at 1).

Because plaintiff did not timely seek EEO counseling, she did not properly exhaust her administrative remedies. Consequently, her claims under Title VII, the Rehabilitation Act, and the ADEA are time-barred and should be dismissed.

       D.  Plaintiff's Claims Under
           the New York City and
           New York State Human Rights Laws

In addition to violating federal law, plaintiff alleges that the Postal Service's conduct towards her violated the New

York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 et seq. (Am. Compl. at 1).  Title VII, however, provides the exclusive, preemptive judicial remedy for claims of discrimination in federal employment.  Brown v. Gen. Servs. Admin., 425 U.S. 820, 828-29, 833-34 (1976).  If federal employees were able to bring an employment discrimination action under anti-discrimination laws other than Title VII, those employees would effectively circumvent the holding of Brown, which rested on the exclusivity of Title VII's "rigorous administrative exhaustion requirements and time limitations."  Brown v. Gen. Servs. Admin., supra, 425 U.S. at 833; see DiPompo v. W. Point Military Acad., 708 F. Supp. 540, 547 (S.D.N.Y. 1989) (Mukasey, D.J.).  Federal employees bringing suit under city and state anti-discrimination laws would eliminate the "crucial administrative role that each agency . . . was given by Congress in the eradication of employment discrimination" under Title VII.  Brown v. Gen. Servs. Admin., supra, 425 U.S. at 833; see DiPompo v. W. Point Military Acad., supra, 708 F. Supp. at 547 (dismissing claims by federal employee under N.Y. Exec. Law § 296 as preempted by Title VII); see also Rivera v. Heyman, supra, 157 F.3d at 105 (dismissing claims by federal employee under N.Y. Executive Law § 296 and N.Y. City Admin. Code § 8-107 as preempted by Title VII and the

33

Rehabilitation Act); Bumpus v. Runyon, supra, 1997 WL 539924 at *3 (dismissing claim by federal employee under state law as preempted by the ADEA).

Because Title VII, the ADEA, and the Rehabilitation Act provide the exclusive remedy for federal employment discrimination, plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y. City Admin Code §§ 8-101 et seq., should be dismissed.

E.   Claims Against Individual
     Defendant C. Andrews

Employment discrimination actions brought by government employees under Title VII must be brought against the head of the agency in which the allegedly discriminatory acts occurred.  See 42 U.S.C. § 2000e-16(c).  Individual defendants are not liable under Title VII, the ADEA, or the Rehabilitation Act.  See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (dismissing Title VII claims against an individual defendant), abrogated on other grounds, Burlington Indus. v. Ellerth, 524 U.S. 742 (1998); Parker v. Metro. Transp. Auth., 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000) (McMahon, D.J.) (ADEA); Hallett v. N.Y. Dep't of Corr. Servs., 109 F. Supp. 2d 190, 199-200 (S.D.N.Y.

2000) (Chin, D.J.) (Rehabilitation Act); <u>See</u> <u>also</u> <u>Torres v. U.S.</u>
<u>Dep't of Veteran Affairs</u>, <u>supra</u>, 2004 WL 691237 at *2 (noting
that "employees, including individual supervisors, are not
subject to suit under Title VII, the Rehabilitation Act, or the
ADEA.") (citations omitted).  Some courts in this circuit have
found that claims under Title VII, the ADEA and the Rehabilita-
tion Act are properly brought against individuals in their
official capacities.  <u>See</u>, <u>e.g.</u> <u>Wray v. Edward Blank Assocs.,</u>
<u>Inc.</u>, 924 F. Supp. 498, 504 (S.D.N.Y. 1996) (McKenna, D.J.).
However, because plaintiff here is able to sue the Postal Service
directly, a claim against Andrews in his official capacity is
unnecessary.  <u>See</u> <u>Hallett v. N.Y. Dep't of Corr. Servs.</u>, <u>supra</u>,
109 F. Supp. 2d at 199-200, <u>quoting</u> <u>Candelaria v. Cunningham</u>, 98
Civ. 6273 (LAP), 2000 WL 798636 at *3 (S.D.N.Y. June 20, 2000)
(Preska, D.J.) (dismissing ADA and Rehabilitation Act claims
against individual defendants in their official capacities and
noting that "because claims against government officials in their
'official capacity' are often permitted to avoid Eleventh Amend-
ment and sovereign immunity issues, such claims are not necessary
'when an individual can sue a government entity directly.'").
Thus, the only proper defendant in this action is Postmaster
General John E. Potter, the head of the agency responsible for

35

the alleged misconduct.  See Maher v. U.S. Postal Serv., 729 F. Supp. 1444, 1452 (S.D.N.Y. 1990) (Griesa, D.J.).

Because the only proper defendant in a Title VII, Rehabilitation Act, or ADEA action is the head of the administrative agency responsible for the allegedly discriminatory conduct, I also recommend that all claims against defendant C. Andrews be dismissed.

IV.  Summary

Plaintiff has alleged discriminatory conduct by defendants over the course of more than thirty years.  Since plaintiff did not seek EEO counseling until June 25, 2008, approximately seventeen years after she left active employment, and at least seven months after the last allegedly discriminatory act, none of plaintiff's claims of workplace discrimination are timely.  To the extent plaintiff is asserting claims for denial of discretionary benefits, her claims in federal court under FECA are precluded by the Secretary of Labor's exclusive jurisdiction.

Additionally, since Title VII, the ADEA, and the Rehabilitation Act provide the exclusive remedy for employment discrimination for federal employees, plaintiff's claims under the New York State and New York City Human Rights Laws should be dismissed.

Lastly, since the only proper defendant in a federal employment discrimination action is the head of the agency responsible for the alleged discriminatory conduct, I also recommend that plaintiff's claims against individual defendant C. Andrews be dismissed.

## V.   Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that Defendants' Motion to Dismiss be  granted in all respects, and that the amended complaint be dismissed.

## VI.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, Room 2510, 500 Pearl Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time

for filing objections must be directed to Judge Batts.  FAILURE
TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF
OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn,
474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34,
38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d
1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300
(2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d
Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 & n.2 (2d Cir.
1983).

Dated:  New York, New York
        August 16, 2010

                                  Respectfully submitted,


                                  HENRY PITMAN
                                  United States Magistrate Judge


Copies mailed to:

Ms. Dorothy M. Shaw
Apt. 331
505 West 142nd Street
New York, New York  10031

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York  10007